United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>JAMES DAVID ALLEN,<br><br>　　　　　　Defendant. | Case No. 20-cr-00300-HSG-1<br><br>**ORDER ON MOTIONS IN LIMINE AND OTHER PRETRIAL ISSUES**<br><br>Dkt. Nos. 38, 40, 41, 42, 43, 44, 45, 46, 47, 48 |

The Court rules on a number of pending pretrial issues as follows.

## I. MOTIONS IN LIMINE AND OTHER PRETRIAL MOTIONS

### A. Motions Already Ruled On at the Pretrial Conference or Otherwise Resolved.

At the pretrial conference on October 21, 2020 (Dkt. No. 82), the Court ruled on the following motions, and the Clerk is thus directed to terminate these motions as resolved: Defendant's motion to require disclosure (Dkt. No. 38); government's motion in limine number four regarding defendant's out of court statements (Dkt. No. 45); government's motion in limine number five regarding "innocent possession" arguments (Dkt. No. 46); and government's motion in limine number six regarding certain defense arguments (Dkt. No. 47).

In addition, with respect to government's motion in limine number one regarding Defendant's prior statements (Dkt. No. 42), the government now agrees that it "no longer seeks a ruling that such selected statements are admissible in its case-in-chief." Dkt. No. 89. The Court thus **DENIES** government's motion in limine number one without prejudice to renewal if and when this issue becomes ripe with respect to the government's rebuttal case.

### B. Government's Motion In Limine Number Two (Dkt. No. 43) and Defendant's Motion in Limine Number Two (Dkt. No. 41)

The government seeks to admit several types of evidence relating to Defendant's prior

felony convictions, and the defense seeks to limit such evidence. At the Court's direction, the government filed a proposed redacted set of the documents it seeks to introduce at trial (Dkt. No. 81), and Defendant filed an opposition (Dkt. No. 88). The Court **GRANTS** Government's motion in limine number two, and **DENIES IN PART AND DEFERS IN PART** Defendant's motion in limine number two.[1]

### i. Applicable Law

Under the Supreme Court's decision in *Rehaif v. United States*, in a 922(g) prosecution, the government "must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possession of a firearm." 139 S.Ct. 2191, 2200 (2019). Defendant here has declined to stipulate to any element of the offense, and has chosen to put the government to its proof both as to whether he has previously been convicted of a felony and as to whether he knew of that status on the date he is alleged to have committed the offense charged in this case.

*Rehaif* substantially changed the law in 922(g) cases. Previously, the government could only introduce evidence of a defendant's prior felony conviction if the defendant would not stipulate to having sustained that conviction. *Old Chief v. United States*, 519 U.S. 172, 186-190 (1997). And even when the defendant declined to stipulate, the Ninth Circuit allowed the government to present evidence regarding a conviction, but assessed whether the district court admitted more evidence than necessary. *See United States v. Weiland*, 420 F.3d 1062, 1078-79 (9th Cir. 2005) (finding error (though harmless) where district court admitted four "nearly identical" records of conviction, because the record was "devoid of any indication that the records of conviction were distinguishable, one from another, in any way meaningful under the Federal Rules of Evidence or for appeal purposes").

Now that the government is required to prove Defendant's *knowledge*, a substantially more difficult task than simply proving the fact of a conviction, it stands to reason that the government

---

[1] The government acknowledges that Defendant's 2010 conviction for possession of methamphetamine was not a felony as a matter of law, and thus agrees that it "will not seek to introduce evidence of that conviction, either through the judgment in that case or through documents relating to Defendant's felon in possession conviction." Dkt. No. 71 at 1-2.

must be permitted to introduce more evidence than it could under the *Old Chief/Weiland* regime. Neither party has cited any cases involving post-*Rehaif* 922(g) trials where this question was addressed, and the Court has found only one out-of-circuit district court case through its own research. *See United States v. Phillips*, No. 19-CR-4440 MV, 2020 WL 4347267 (D. N.M. July 29, 2020). However, the Ninth Circuit has recently addressed post-*Rehaif* challenges to 922(g) convictions in a manner that supports admission of the evidence the government seeks to introduce here.

For example, last week in *United States v. Johnson*, No. 17-10252, 2020 WL 6268027 (9th Cir. Oct. 26, 2020), the Ninth Circuit found that the defendant could not meet the fourth prong of the plain error standard in a case involving a pre-*Rehaif* trial at which no evidence was presented regarding the knowledge of conviction element (consistent with the law as it existed at the time of trial). The government conceded that the district court erred in not requiring the government to prove defendant's knowledge of his status as a convicted felon, and that the error was clear in light of *Rehaif*. *Id.* at \*3. To meet the fourth prong of the plain error test, a defendant "must show that the district court's error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* The *Johnson* court framed the central issue as "whether, in assessing the fourth prong of the plain-error standard, we may consider the entire record on appeal or only the record developed at trial," *id.* at \*4, and held that it was appropriate to review the entire record on appeal.

In reaching this decision, the Ninth Circuit noted that the factual stipulation submitted by the parties at trial (consistent with pre-*Rehaif* authority) did not address whether the defendant knew he had been convicted of a felony, and instead "merely stat[ed], as a matter of historical fact, that [defendant] had previously been convicted of 'a crime punishable by imprisonment for a term exceeding one year.'" *Id.* The court explained that "[w]ithout more information about the nature of the crime or the length of the sentence imposed, a rational trier of fact would be hard pressed to infer that [defendant] knew of his prohibited status as required under *Rehaif*." *Id.* But the court considered the full appellate record, which contained "overwhelming and uncontroverted" evidence, and found evidence about these details critical to (and dispositive of) the issue of defendant's knowledge:

3

> According to the presentence report prepared in this case, at the time he possessed the firearms, Johnson had sustained the following convictions: a 1998 felony conviction for which he received a sentence of 28 months in prison; a 2004 felony conviction for which he received a sentence of two years in prison; and a 2007 felony conviction for which he was again sentenced to two years in prison. . . . In light of the sentences imposed in his earlier cases, [defendant] cannot plausibly argue that a jury (or judge, if he opted again for a bench trial) would find that he was unaware of his status as someone previously convicted of an offense punishable by more than a year in prison. After all, he had in fact already served three prior prison sentences exceeding one year. *Cf. Rehaif*, 139 S.Ct. at 2198 (noting that a defendant "who was convicted of a prior crime but sentenced only to probation" might be able to claim that he did not know he had been convicted of a crime punishable by more than a year of imprisonment).

*Id.* at *5.

Similarly, in *United States v. Luong*, 965 F.3d 973, 973 (9th Cir. 2020), another 922(g) case involving a pre-*Rehaif* trial, the Ninth Circuit found that defendant could not satisfy the third and fourth prongs of the plain error test for the same reasons discussed in *Johnson*:

> [Defendant] had at least six prior felony convictions at the time he possessed the charged firearm, four of which resulted in prison sentences exceeding one year. In total, these convictions resulted in [defendant] being incarcerated for more than a decade. In light of this, while clear error did occur here, we conclude that, even if the district court had instructed the jury on the knowledge-of-status element, there is no reasonable probability that the jury would have reached a different verdict.

*Id.* at 989.

Finally, in *United States v. Benamor*, 937 F.3d 1182, 1189 (9th Cir. 2019), the Ninth Circuit likewise found "no probability that, but for the error, the outcome of the proceeding would have been different." This was because:

> When Defendant possessed the shotgun, he had been convicted of seven felonies in California state court, including three felonies for which sentences of more than one year in prison were actually imposed on him. The felonies included one case in which Defendant sustained convictions for being *a felon in possession of a firearm* and *a felon in possession of ammunition*; he was sentenced to five years and eight months in prison. Defendant spent more than nine years in prison on his various felony convictions before his arrest for possessing the shotgun. At a minimum, the prior convictions for being a felon in possession of a firearm and being a felon in possession of ammunition proved beyond a reasonable doubt that Defendant had the knowledge required by *Rehaif* and that any error in not instructing the jury to make such a finding did not affect Defendant's substantial rights or the fairness, integrity, or public reputation of the trial.

4

*Id.* (emphasis in original).

### ii. Discussion

#### a. Court Documents

All of these authorities make plain that the government's motion to admit certified redacted copies of the judgment documents (including the sentence actually imposed in each case) and a redacted copy of the change of plea transcript (Dkt. No. 81, Exs. F, H and I) should be granted, and that Defendant's contrary position must be rejected. First, as the above authorities make clear, none of this is Rule 404(b) "other acts" evidence as Defendant contends. *See* Dkt. No. 41 at 2-5. Instead, it is direct and highly probative evidence of an element of the charged offense (*i.e.*, that Defendant knew that he had been convicted of a felony at the time he possessed the firearm and ammunition described in the indictment). It follows that Rule 403 does not require exclusion of this evidence either: as recognized by the Ninth Circuit in *Johnson*, *Luong* and *Benamor*, such evidence has exceptionally high, even determinative, probative value on the relevant question, and that value clearly is not substantially outweighed by any of the concerns identified in Rule 403.

Finally, the authorities discussed above make clear that Defendant's proposal to refer only to a nameless offense rather than the actual offenses of conviction is also unwarranted. In assessing whether the government has met its burden of proving knowledge of status beyond a reasonable doubt, the nature of the offense is highly relevant to determining whether it is plausible that Defendant would not know of the status that made him a prohibited person. *See Benamor*, 937 F.3d at 1189 (stressing that prior convictions were for felon in possession of firearm and ammunition in concluding that those convictions proved the knowledge required by *Rehaif* beyond a reasonable doubt); *Phillips*, 2020 WL 4347267 at *3-4 (admitting two prior convictions for Felon in Possession of a Firearm where defendant did not intended to stipulate to the fact the he had a prior felony for purposes of 922(g)(1));[2] *United States v. Paul*, No. 19-10846, 2020 WL

---

[2] The Court respectfully disagrees with the *Phillips* court's determination that, post-*Rehaif*, evidence of prior felony convictions should be analyzed under Rule 404(b). But even if the Court were to analyze this as a Rule 404(b) issue as Defendant urges, it still would find the proffered evidence admissible. The evidence tends to prove a material, even pivotal, point (whether

5

5371545, at *3 (11th Cir. Sept. 8, 2020) (finding no error where defendant stipulated to the fact that he had been convicted of a crime punishably by a term of imprisonment in excess of one year, and the government entered into evidence at trial a copy of the judgment of conviction for the prior felony which "showed that [defendant] had pleaded guilty in 2015 to the state crime of possession of a firearm by a convicted felon.").[3]

The Court will give a limiting instruction regarding this evidence to make it clear to the jury that it may only be considered for whether the government has proven the felony conviction and knowledge of status elements, and not for any other purpose.

### b. Probation Officer Testimony

Finally, the government offers "[t]he testimony of Defendant's probation officer in the Western District of Washington that Defendant is the same person she supervised after he was released from prison after serving his sentence in Case No. 10-00322." Dkt. No. 43 at 3. The Court will admit this evidence solely for the limited purpose of showing identity, and that Defendant in fact served a prison sentence in excess of one year, subject again to a limiting instruction. The Court cautions the government that this testimony could quickly become cumulative and pose a Rule 403 problem if overdone, and directs the government to narrowly limit this testimony to these two specific points.

For all of these reasons, the government's motion in limine number two is **GRANTED** subject to the redactions and limitations in this order, and Defendant's motion in limine number two is **DENIED** to the extent it seeks exclusion of the government's proffered evidence.[4]

---

Defendant knew of his felon status as required by *Rehaif*), the other act was not too remote in time, and the prior conviction documents conclusively establish that Defendant committed the felonies at issue. *See United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (setting out factors for admissibility under Rule 404(b)). Moreover, for the same reasons discussed above, the very high probative value of this evidence is not substantially outweighed by any of the considerations set out in Rule 403.

[3] Because the parties now agree that Defendant's 2010 methamphetamine conviction was not for a felony, the government must further redact Exhibit H at page 5 of the plea agreement to remove the reference to "two" felony convictions. The same redaction needs to be made in Exhibit I at page 10 of the transcript.

[4] In his motion in limine number two, Defendant also seeks a ruling that his convictions are inadmissible to impeach him under Rule 609. Dkt. No. 41 at 5. To the extent this argument is not effectively mooted by the rulings above, the Court **DEFERS** consideration of the Rule 609 issue unless and until Defendant testifies.

### C. Government's Motion in Limine Number Three (Dkt. No. 44)

The government seeks to admit three categories of evidence in this motion, which it characterizes as "intrinsically intertwined" with the charged offense or, in the alternative, as admissible under Rule 404(b).

First, the government proffers that the assault rifle found in Defendant's possession "was stolen from a store in Marysville, Washington (which was selling it on consignment) during a burglary in the early morning hours of June 28, 2020, ten days prior to Defendant's arrest." Dkt. No. 44 at 1. The government seeks "to call the owner of the store, who will testify that the firearm was a working firearm, was stolen from his store along with three other firearms, and that it had no handwritten markings on it at the time it was stolen." *Id.*

Second, the government proffers that the owner of the Corolla in which Defendant was found on the day of his arrest "called the Everett, Washington Police Department on July 6, 2020, less than 48 hours prior to Defendant's arrest, to report the car stolen." *Id.* at 1-2. The government seeks "to call the owner of the Corolla, who will testify that he parked his vehicle on the street outside his apartment in Everett at around 4:00 a.m. on July 6, 2020, that he accidentally left the key in the ignition, that the vehicle was empty when he left it, when he tried to return to the Corolla at about 1:00 p.m. it was no longer there, and that he reported this to the police." *Id.* at 2. The government also seeks to elicit testimony from this person "that the firearm that was later found in the vehicle was not his." *Id.*

Third, the government seeks to admit Defendant's statement that he would have "shot it out" with the arresting officers if they had conducted a traffic stop.[5]

The Court **DENIES** the government's motion as to the gun theft and car theft evidence, and **GRANTS** the motion as to the "shoot it out" statement.

#### i. Gun and Car Owner Testimony

The Court first finds that neither the gun theft or car theft evidence is "inextricably intertwined" with the simple offense charged here: possession of a firearm and ammunition. As Defendant points out, the Ninth Circuit has held that "[t]here must be a sufficient contextual or

---

[5] The Court denied Defendant's motion to suppress this statement. Dkt. No. 107 at 16-17.

7

substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995). To warrant exemption from Rule 404(b)'s requirements, the evidence must either "constitute[] a part of the transaction that serves as the basis for the criminal charge," or must be "necessary . . . in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime," because "it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *Id.* at 1012-13. Neither exception applies here: whether the gun or the car was stolen, at some point, by someone, simply does not bear on the straightforward question the jury will have to decide: did the Defendant possess the firearm in the day in question? The government cites no published authority from the Ninth Circuit or any other circuit endorsing the admission of this type of evidence under an "inextricably intertwined" theory, and none of the unpublished and nonbinding cases on which it relies remotely supplies persuasive support for its argument here. *Compare United States v. Navarro*, 492 Fed. App'x. 794, 795 (9th Cir. 2012) (testimony about "why law enforcement stopped [defendant] on the street" was inextricably intertwined, whereas in the instant case ample evidence about why Defendant was arrested—the stolen car report in the police database—can come in without resort to a minitrial involving testimony about events remote in time and place from the arrest); *United States v. Brown*, 765 Fed. App'x. 902, 907 (4th Cir. 2019) (finding that admission of officer testimony that they stopped car based in part on a "database search" reporting it stolen was not erroneous under Rule 404(b)).

Next, even if this evidence constitutes properly noticed Rule 404(b) evidence (which the Court need not now decide), it plainly should be excluded from the government's case in chief under Rule 403. The government says that it "does not intend to argue or introduce additional evidence that Defendant committed the burglary" or, apparently, that he stole the car. Dkt. No. 44 at 3-4. Instead, it claims that this evidence is "probative of Defendant's possession of the firearm and his *mens rea*," or "offered to prove Defendant's knowledge and absence of mistake." *Id.* at 3-4. As Defendant correctly points out, the Ninth Circuit has held that under Rule 403, a district

court must critically "evaluate the degrees of probative value . . . not only for the item in question but for any actually available substitutes as well." *Unites States v. Merino-Balderrama*, 146 F.3d 758, 762 (9th Cir. 1998) (quoting *Old Chief*, 519 U.S. at 182) (quotations omitted).

Here, neither witness's testimony is needed to "explain[] the officers' actions in approaching and detaining Defendant," Dkt. No 4: as noted above, the testimony and evidence regarding the stolen car report comprehensively do that. The proffered evidence about the theft and the condition of the gun and car when their owners last saw them is only marginally probative, because there will be nothing in the record to explain (or even suggest) what happened to these items in the interim between the reported thefts and Defendant's arrest.[6] These events were remote in time from the relevant day of the arrest, and do not establish any wrongdoing by the Defendant. The open-ended suggestion that crimes were committed by "someone" with respect to evidence that just so happened to end up in Defendant's possession creates an obvious and substantial risk of undue prejudice that cannot be adequately cured with a limiting instruction. The proffered testimony would also unduly waste time in this very straightforward case, and necessarily would entail a mini-trial on the peripheral issue of whether Defendant was involved in these other, uncharged crimes. *See United States v. Lukashov*, Nos. 09-cr-00120-BR, 14-cv-00520-BR, 2015 WL 5175023 at * 6 (D. Or. Sept. 3, 2015) ("Rule 404(b) serves the important purpose of focusing trial on the issues central to the case and avoiding 'mini-trials' about corollary issues.").

For all of these reasons, the gun owner and car owner testimony may not be presented in the government's case in chief unless expressly allowed by the Court. As the Court has said with respect to many issues in this case, this ruling is subject to reconsideration if the defense opens the door to the introduction of this evidence under Rule 404(b), either during the government's case in chief or in the defense case. But based on the current record, it is excluded, and the government's

---

[6] To the extent the point is, for example, that "[w]hen the firearm was found in the Corolla ten days later, it had hand-markings on it, including the word 'Carpenter,' a name Defendant told police he was also known by," Dkt. 44 at 3, these facts can both be persuasively proved without any testimony by the gun owner whatsoever, and the fact that these markings were not on the gun the last time the owner saw it supplies only marginal additional relevance in light of the powerful inference of knowledge created by Defendant's name being written on the gun.

9

motion is denied.

### ii. "Shoot It Out" Statement

The Court grants the government's motion to introduce Defendant's "shoot it out" statement. That statement is extremely probative on the question of whether Defendant knowingly possessed the assault rifle, is not cumulative, and is not unfairly prejudicial. The Court will provide a limiting instruction that the jury is to consider this evidence only as it bears on the knowing possession element and for no other purpose.

### D. Government's Motion in Limine Number Seven (Dkt. No. 48)

The government next moves to admit the testimony of two law enforcement officers: Pinole Police Department Officer Andre Roberts and ATF Special Agent Andrew Balady.

### i. Officer Roberts

The government proffers testimony from Officer Roberts, who arrested Defendant and found the assault rifle during the search of the Corolla, "that the firearm was within Defendant's reach and immediately accessible to [Defendant] when he was sitting in the driver's seat of the Corolla, based on the location that [Officer Roberts] found the firearm." Dkt. No. 48 at 3. The government offers this evidence under Rule 701 as lay opinion testimony that is "rationally based on the witness's perception and helpful to clearly understanding the witness's testimony or to determining a fact in issue." *Id.* (quoting Fed. R. Evid. 701) (internal notations omitted). The motion is **DENIED** as to this evidence. Officer Roberts obviously can testify regarding where the gun was, where Defendant was, how much space was between Defendant and the gun, where the gun was with relation to the Defendant's right hand and similar percipient observations, but his opinion as to whether the gun was "within reach" or "immediately accessible" adds nothing that the jury cannot infer for itself based on the objective facts. It accordingly is not "helpful" to the jury, is simply argument in the guise of witness testimony, and is excluded. *See, e.g.*, *United States v. Martinez*, No. CR 13-00794 WHA, 2015 WL 269794, at *2 (N.D. Cal. Jan. 20, 2015) (where proffered testimony is argumentative, it "should be proven up with direct evidence, not police opinion").

### ii.  Agent Balady

The government appears to proffer several opinions from Agent Balady under Rule 702:

- Agent Balady "examined the identification markings of the firearm and ammunition and determined through research that the firearm and ammunition were manufactured outside the state of California." Dkt. No. 48 at 1.
- Agent Balady "will also testify that the firearm and ammunition had been shipped or transported from one state to another or from a foreign country into the United States, and had traveled in interstate or foreign commerce prior to being seized by law enforcement in this case." *Id.*
- "The firearm is a 'firearm' and the ammunition is 'ammunition' as defined under 18 U.S.C. § 921 . . . ." *Id.*
- [A]ll the ammunition seized from the vehicle was designed to be fired by the type of firearm that was seized from the vehicle." *Id.*
- The firearm and ammunition "appeared operable, and . . . all the ammunition found in the Corolla could have been fired by the" seized assault rifle. *Id.* at 3.

Defendant does not contest that Agent Balady may testify to "the place of manufacture of the firearm and ammunition," but otherwise objects to the proffered testimony in its entirety. Dkt. No. 68 at 1-5.

Defendant first contends that the government's initial expert notice was deficient under Rule 16(a)(1)(G), which requires a "written summary" of expert testimony which "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.* at 2 (citing Fed. R. Crim. Pro. 16(a)(1)(G)). At the pretrial conference on October 21, the Court directed the government to file any amended Rule 16 expert disclosure and produce it to the defense, and the government did so on October 23. Dkt. No. 86.

The Court finds that sufficient notice has been given as to the following opinions, and that Agent Balady may offer them under Rule 702:

- "The firearm and ammunition were manufactured outside the state of California." Dkt. No. 48 at 1.

11

- "The firearm is a 'firearm' and the ammunition is 'ammunition' as defined under 18 U.S.C. § 921 . . . ." *Id.*
- "The firearm and ammunition had been shipped or transported from one state to another or from a foreign country into the United States, and had traveled in interstate or foreign commerce prior to being seized by law enforcement in this case."

There is no dispute as to the admissibility of the first opinion above. As to the second and third opinions, Agent Balady has sufficiently provided "the bases and reasons" for these opinions, based on his examination of the gun and ammunition, his training and experience and his review of ATF records. Dkt. No. 86 at 1-2. As to the third opinion, the Court finds that Ninth Circuit authority suggests that an expert may testify to the ultimate issue of interstate travel beyond just testimony about place of manufacture. *See United States v. Dunn*, 946 F.2d 615, 618 (9th Cir. 1991) (explaining that "[t]he Ninth Circuit allows expert testimony regarding the identity of the manufacturer to establish that a gun travelled in interstate commerce before the defendant received it," and that "although expert testimony may not be *necessary* to establish the location of the manufacturer, it is permissible as part of an expert's testimony on the ultimate issue—whether the gun travelled in interstate commerce") (emphasis in original).

The Court excludes the following opinions:

- "[A]ll the ammunition seized from the vehicle was designed to be fired by the type of firearm that was seized from the vehicle." Dkt. No. 48 at 1.
- The firearm and ammunition "appeared operable, and . . . all the ammunition found in the Corolla could have been fired by the" seized assault rifle. *Id.* at 3.

It is simply irrelevant as a matter of law whether the firearm "appeared operable" or was designed to or actually "could fire" the seized ammunition, and the government offers no authority to the contrary. Whether the ammunition did or did not fit the gun, and whether or not the gun was "operable," Defendant would be precluded from possessing either by virtue of his prior felony convictions. The district court's ruling in *United States v. Johnson*, No. 14-cr-00412-TEH, 2015 WL 5012949 (N.D. Cal. Aug. 24, 2015) simply does not support the government's blanket

12

assertion that "[e]xpert testimony is also permitted about firearms and ammunition generally and their operation." *Id.* at 2.  The proffered opinion essentially appears intended to establish that Defendant was dangerous and could have shot someone (even though there is no evidence that he did, or any showing why the proffered facts are relevant to any element of the offense).  To the extent these opinions are relevant under Rule 401 (and the government has not shown why they are), their probative value is substantially outweighed by the risk of unfair prejudice, confusing the issues, and wasting time so as to require exclusion under Rule 403.

As with the other issues discussed in this order, the Court will revisit this ruling if Defendant opens the door, either in the government's case in chief or in his own case, so as to change the balance between probative value and risk under Rule 403.

### E.  Defendant's Motion in Limine Number One (Dkt. No. 40)

Defendant moves to exclude the following items of evidence as to which the Court has not already ruled, which he characterizes as Rule 404(b) evidence: "items found on Mr. Allen's person, including a knife."[7]

The items seized from Defendant are not Rule 404(b) evidence: they are inextricably intertwined with the evidence of the charged offense, and are necessary to permit the government to coherently tell the story of the seizure, arrest and search.  In particular, evidence regarding the knife on Defendant's hip is necessary to explain actions Officer Roberts took when he first approached the car Defendant was sitting in.  The government does not oppose a limiting instruction as to this evidence, Dkt. No. 70 at 5, and the Court will instruct the jury that it may consider evidence regarding the knife on Defendant's person to explain the officers' subsequent actions, and not for any other purpose.  The Court intends to give the same limiting instruction to the extent the bodycam footage may show knives or other items beyond the gun and ammunition.

Beyond testimony about the knife on Defendant's person, the government does not address any other seized evidence it intends to introduce, and it is not even clear that it intends to actually

---

[7] The Court's rulings as to Defendant's motion to suppress and Government's motion in limine number three above resolved, and thus rendered moot, Defendant's requests to exclude (1) testimony from the gun owner about its theft; (2) testimony from the car owner about its theft; and (3) his post-arrest statements.

13

offer the knife or any other seized items beyond the gun and ammunition into evidence. *Id.* at 3; *compare* Dkt. No. 75 at 3 (government's exhibit list, which does not include any of the seized items other than the rifle and ammunition and photographs of same).

The government shall confirm at the next hearing in this matter at 10:00 a.m. on November 5, 2020 that consistent with its exhibit list it does not intend to introduce any other seized evidence.

**IT IS SO ORDERED.**

Dated: 11/3/20

HAYWOOD S. GILLIAM, JR.
United States District Judge