1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7    USA,                                    Case No.  20-cr-00300-HSG-1
8                    Plaintiff,              **ORDER DENYING IN PART AND
                                             GRANTING IN PART MOTION TO
9           v.                               SUPPRESS EVIDENCE; ORDER
                                             DENYING MOTION TO DISMISS**
10   JAMES DAVID ALLEN,
                                             Re: Dkt. Nos. 170, 171
11                   Defendant.
12
13          Defendant is charged with being a felon in possession of a firearm and ammunition, in

14   violation of 18 U.S.C. § 922(g)(1).  Dkt. No. 7.  On May 16, 2022, the case was remanded after

15   the Ninth Circuit vacated Defendant's conviction.  Dkt. No. 161.  The case was remanded for this

16   Court to conduct a new suppression hearing and a new trial.  *Id.*  Defendant has filed a motion to

17   dismiss the indictment, as well as a renewed motion to suppress.  Dkt. Nos. 170, 171.  On

18   November 14, 2022, the Court held an evidentiary hearing on the renewed motion to suppress,

19   heard argument regarding that motion, and took the motion to dismiss under submission.  Dkt. No.

20   202.  The Court then allowed the parties to present argument regarding the motion to dismiss at

21   the pretrial conference on November 23, 2022.

22   **I.    MOTION TO SUPPRESS**

23          **A.    Legal Standard**

24          The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

25   houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. Amend. IV.

26   The exclusionary rule protects this right by permitting a criminal defendant to move to suppress

27   evidence that was obtained in violation of his Fourth Amendment rights.  *United States v.*

28   *Calandra*, 414 U.S. 338, 347–48 (1974).  It acts as a deterrent, "to compel respect for the

United States District Court
Northern District of California

1    constitutional guaranty in the only effectively available way—by removing the incentive to

2    disregard it." *Id.* at 347 (quotation omitted).

3        The exclusionary rule "reaches not only primary evidence obtained as a direct result of an

4    illegal search or seizure, but also evidence later discovered and found to be derivative of an

5    illegality or 'fruit of the poisonous tree.'" *United States v. Pulliam*, 405 F.3d 782, 785 (9th Cir.

6    2005) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).  The government bears the

7    burden of proving that a warrantless search or seizure falls within an exception to the warrant

8    requirement.  *United States v. Scott*, 705 F.3d 410, 416–17 (9th Cir. 2012).

9        Defendant both renews the arguments in his prior motion to suppress and raises new

10   arguments not asserted before the first trial.  Dkt. No. 170 at 1.  Specifically, in addition to

11   challenging the legality of the warrantless search of the car he was found in, Defendant now

12   argues that "even if this Court finds that the officers lawfully searched the vehicle, as it did in the

13   original suppression proceedings, it should find that the officers' *seizure* of the firearm and

14   ammunition was unlawful, warranting their suppression." *Id.* (emphasis in original).  The Court

15   thus addresses these two aspects of the motion to suppress separately below.

### B.    Legality of warrantless search

17       At the renewed evidentiary hearing, the parties stipulated to the admission of the testimony

18   of Pinole Police Department ("PPD") dispatcher Terri Krieger from the original evidentiary

19   hearing, as well as the exhibits admitted during her prior testimony.  Dkt. No. 203 (transcript of

20   November 16, 2022 evidentiary hearing) at 4, 6.  The government then presented testimony from

21   two witnesses:  PPD Officer Andre Roberts and PPD Sergeant Barry Duggan.  *See generally* Dkt.

22   No. 203.  Both of these witnesses testified at the prior evidentiary hearing.

23       Following the evidentiary hearing conducted before Defendant's appeal, the Court issued

24   an order with detailed factual findings denying the motion to suppress.  Dkt. No. 107.

### i.    Probable Cause to Arrest and Inventory Search

26       With respect to the renewed motion to suppress, the Court again finds that the motion

27   should be denied on the same grounds previously articulated: Defendant's arrest was lawful, and

28   the ensuing search of the car was also lawful as an inventory search.  *Id.* at 6-16.  The record

United States District Court
Northern District of California

Error

developed at the renewed evidentiary hearing was either identical (Dispatcher Krieger's testimony admitted by stipulation) or materially the same as that underlying the prior order.  Specifically, the record again established the key facts supporting the legality of the arrest and inventory search, including that:

- Defendant was lawfully arrested for, at a minimum, possession of stolen property (the Corolla), based on reliable information from law enforcement databases. Hearing Ex. 2 at 3; November 14, 2022 Hr'g Tr. at 25:21-23, 28:1-6.

- Once Defendant was arrested, the Corolla needed to be towed, because it was registered in Washington, meaning that the registered owner was unlikely to be able to retrieve it personally in a timely manner.  November 14, 2022 Hr'g Tr. at 29:20-30:10, 73:4-7.

- Before beginning the search, the officers started to complete the CHP 180 form, which pertains to "vehicle storage" and which must under PPD policy be filled out on the scene when a vehicle is impounded.  November 14, 2022 Hr'g Tr. at 15:2-9, 28:1-9; Hearing Ex. 3 (Pinole Police Department Policy Manual) at § 502.2.1 (section titled "Vehicle Storage Report"); *id.* at § 502.3.3(b) (section titled "Towing Procedure").

- Under PPD policy, "[a]ll property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form [i.e., the CHP 180 form]." *Id.* at § 502.4 (section titled "Vehicle Inventory").

Accordingly, the Court again adopts the legal reasoning in its prior order denying the motion on this ground in full.[1]

### ii.   Automobile exception

In addition, the government has now timely raised additional alternative bases for the

---

[1] The Court also finds that the evidentiary record on the renewed motion continues to support its prior findings as to the admissibility of Defendant's statements:  the motion to suppress is denied as to Defendant's "shoot it out" statement, and granted as to his "thief stockbroker" statement, for the same reasons articulated previously.  Dkt. No. 107 at 16-17.

1    denial of the motion, one of which the Court finds meritorious.[2]  Specifically, the Court finds that

2    the warrantless search of the Corolla was also valid under the automobile exception to the Fourth

3    Amendment's warrant requirement.  "[P]olice may conduct a warrantless search of a vehicle if

4    there is probable cause to believe that the vehicle contains evidence of a crime."  *United States v.*

5    *Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010).  There is probable cause for a search where, in light

6    of the totality of the circumstances, there is "a fair probability that contraband or evidence of a

7    crime will be found in a particular place."  *United States v. Pinela–Hernandez*, 262 F.3d 974, 978

8    (9th Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *Brooks*, 610 F.3d at 1193

9    (citation omitted); *see also Ornelas v. United States*, 517 U.S. 690, 696 (1996) ("We have

10   described . . . probable cause to search as existing where the known facts and circumstances are

11   sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a

12   crime will be found . . . . ") (citations omitted).

13         Probable cause is an objective standard: the officers' subjective intention is immaterial in

14   determining whether their actions violated the Fourth Amendment.  *See Bond v. United States*, 529

15   U.S. 334, 339 n.2 (2000) ("the subjective intent of the law enforcement officer is irrelevant in

16   determining whether that officer's actions violate the Fourth Amendment").  The automobile

17   exception permits searches of containers or packages within the vehicle.  *United States v. Ross*,

18   456 U.S. 798, 823–24 (1982).

19         The record establishes that before searching the Corolla, Officer Roberts had probable

20   cause to believe that the car would contain evidence of at least two crimes:  auto theft and

21   possession of stolen property.  Dispatcher Krieger confirmed with the Everett Police Department

22   that the Corolla was reported stolen there, and Officer Roberts confirmed that the VIN of the

23   Corolla matched the stolen car report.  Ex. 2 at 3-4; Dkt. No. 108 (transcript of October 26, 2020

---

[2] Defendant submits that "[b]ecause the Ninth Circuit vacated Mr. Allen's conviction, this Court must consider Mr. Allen's suppression motion de novo."  Dkt. No. 170 at 1 (citing cases).  On this basis, the Court considers the new arguments timely raised by both Defendant and the government.  This includes arguments that the government previously failed to raise in a timely manner, because it has now done so in this renewed de novo suppression proceeding.  *Cf.* Dkt. No. 107 at 16 and n.7 (declining to consider standing and automobile exception arguments that were not timely raised).

1    evidentiary hearing) at 29:21-30:9; Dkt. No. 203 (transcript of November 16, 2022 renewed

2    evidentiary hearing) at 25:18-23, 28:1-6.  At that point, Officer Roberts arrested Defendant.  Dkt.

3    No. 203  at 25:21-23.

4          In *Rohde v. City of Roseburg*, 137 F.3d 1142, 1144 (9th Cir. 1998), the Ninth Circuit held

5    that "a stolen vehicle report alone furnishes sufficient basis to arrest the driver" of a vehicle.  *Id.*

6    (citing *Lipton v. United States*, 348 F.2d 591, 594 (9th Cir.1965)).  So long as the officer "has

7    reliable information, such as a police report, indicating that the vehicle has been stolen, he thus has

8    probable cause to believe that the driver has committed the crime of either stealing the car or

9    knowingly operating a stolen vehicle." *Id*.  This is true "even if the report is later discovered to be

10   erroneous." *Id.*

11         It follows on this record that at a minimum there was also probable cause to believe that

12   evidence of those suspected crimes (either car theft or knowing possession of a stolen car) would

13   be located in the car.  As the government points out, it stands to reason that there was a fair

14   probability that evidence relevant to who owned the car and how Defendant came to be in

15   possession of it would be found in the car itself.  *See* Dkt. No. 203 at 16:14-15 (testimony of

16   Officer Roberts that "oftentimes, we'll find evidence of how the vehicle was stolen, so like shaved

17   keys or like a screwdriver in the ignition, stuff like that").  Defendant's Washington driver's

18   licenses did not match the registered owner information for the Corolla.  *Id.* at 25:11-17.

19   Defendant also hesitated when he was asked whether he had anything potentially illegal in the car,

20   which was a change in his demeanor up to that point. *Id.* at 23:5-21.  Moreover, the evidence

21   establishes that the car reasonably appeared to be "readily mobile."  Before the search, Defendant

22   told Officer Roberts that he lived in Washington, and was on his way to San Francisco.  Ex. B at

23   1:45-58.   Officer Roberts had also confirmed before the search that the car was reported stolen

24   out of Washington, it had Washington plates, Defendant had produced two Washington driver's

25   licenses, and the car was found hundreds of miles from Washington in Pinole, California.  Dkt.

26   No. 203 at 20:6-20; 24:4-9; 25:11-17.  *See Scott*, 705 F.3d at 417 (explaining that "the

27   applicability of the automobile exception does not turn on whether the car's owner or driver has

28   already been taken into custody or the risk of mobility has otherwise been eliminated," and applies

United States District Court
Northern District of California

5

1   "if the vehicle is 'readily mobile by the turn of an ignition key, even if it is not actually moving,'

2   and is being 'used as a licensed motor vehicle subject to a range of police regulation inapplicable

3   to a fixed dwelling'" (cleaned up)).

4        The Court thus finds that the warrantless search of the Corolla was also independently

5   justified under the automobile exception, and denies the motion to suppress the fruits of that

6   search on this alternative ground as well.[3]

7             **iii.**     **Legality of warrantless seizure of assault rifle and ammunition**

8        Defendant next argues that the rifle and ammunition must be suppressed because "at the

9   time of the seizure of the firearm and ammunition, officers did not have probable cause to believe

10   the items were incriminating." Dkt. No. 170 at 2. The Court rejects this argument for two

11   independent reasons.

12        First, there was probable cause to seize the rifle as soon as officers located it. In the course

13   of conducting the warrantless search the Court has already found to be lawful, Officer Roberts

14   discovered the rifle on the front passenger floorboard, partially covered by a jacket. Dkt. No. 203

15   at 30:16-31:2; Ex. C at 0:11-18. There was thus immediate probable cause to examine the rifle as

16   evidence of a potential violation of California Penal Code Section 25850(a), which makes it

17   unlawful to "carr[y] a loaded firearm . . . in a vehicle while in any public place or on any public

18   street in an incorporated city." Officer Roberts quickly determined that the rifle was loaded with a

19   magazine, and there was a second loaded magazine taped to the magazine loaded in the rifle. Dkt.

20   No. 203 at 31:34, 40:24-41:5; Ex. C at 0:32-37.

21

22   ---

   [3] The government contends that Defendant has not met his burden of showing standing to

23   challenge the search of the Corolla (or the seizure of the rifle and ammunition). Dkt. No. 175 at 9-
10. The Court does not reach this question, because it exercises its discretion to address the

24   substantive issue first and finds that the challenged search and seizures were lawful. "Because
Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not

25   a jurisdictional question and hence need not be addressed before addressing other aspects of the
merits of a Fourth Amendment claim." *Byrd v. United States*, 138 S. Ct. 1518, 1531-31 (2018).

26   The Court also does not separately address the government's "inevitable discovery" argument,
because it appears the applicability of that doctrine on this record is derivative of the validity of

27   the inventory search justification. *See United States v. Ruckes*, 586 F.3d 713, 718-19 (9th Cir.
2009) (affirming denial of motion to suppress because even though search was not validly

28   conducted incident to arrest, "permissible inventory search" necessarily would have followed and
led to inevitable discovery of firearm and drugs in vehicle).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendant relies on two district court cases, *United States v. Barajas*, 517 F. Supp. 3d

2    1008 (N.D. Cal. 2021), and *United States v. Thompson*, 553 F. Supp. 3d 429 (N.D. Ohio 2021), in

3    arguing that "the officers in this case 'had to have prior probable cause as to [the property's]

4    contraband status before taking it in hand. . . .'"  Dkt. No. 199 (Reply) at 5 (quoting *Thompson*);

5    *see also* Dkt. No. 170 at 2.  Those cases are not binding, and in any event here the searching

6    officers permissibly picked up the rifle they found during the lawful warrantless search of the

7    Corolla, at which point it was readily apparent that it was loaded in violation of Penal Code

8    section 25850(a).  *See Barajas*, 517 F. Supp. 3d at 1024 (discussing *United States v. Truitt*, 521

9    F.2d 1174 (6th Cir. 1975), and noting that "the intrinsically criminal nature of the item found [in

10   that case] was immediately apparent, as the executing officers recognized it as a sawed-off

11   shotgun at the time at the time of seizure").  Once the rifle was found, there was probable cause to

12   seize any ammunition found as evidence relevant to that offense.  The Court thus rejects

13   Defendant's argument, and finds that there was probable cause to seize the rifle and ammunition.

14   Second, the Court agrees with the government that the rifle and ammunition, including

15   high-capacity magazines, were also appropriately seized under the community caretaking doctrine.

16   The Supreme Court has explained that inventory searches serve to protect the public "from

17   vandals who might find a firearm . . . or . . . contraband drugs."  *South Dakota v. Opperman*, 428

18   U.S. 364, 376 n.10 (1976).  It would be extremely dangerous for the searching officers to find a

19   loaded assault rifle and high-capacity magazines in a stolen car being impounded after its driver

20   had been lawfully arrested, but then just put those items back in the car before it was towed, in the

21   hope that no one would break into it at or on the way to the impound lot.  Nothing in *United States*

22   *v. Chavez*, a Tenth Circuit case on which Defendant relies, supports any different result:  in that

23   case, the seizure of a gun from a car occurred when the car was parked on private property, and

24   the verified owner of the car was present and could have taken the gun inside.  985 F.3d 1234,

25   1238, 1245 (10th Cir. 2021).  Instead, this is the paradigmatic circumstance in which the only

26   reasonable means of protecting the public from the risk of a loaded assault rifle and high-capacity

27   magazines and other ammunition falling into the wrong hands was to seize them.  *See Cady v.*

28   *Dombrowski*, 413 U.S. 433, 437, 447 (1973) (explaining that "the justification [for searching a car

1    suspected to contain a gun] . . . was . . . immediate and constitutionally reasonable . . .: concern for

2    the safety of the general public who might be endangered if an intruder removed a revolver from

3    the trunk of the vehicle").

4          The Court thus denies the motion to suppress based on the seizure of the rifle and

5    ammunition on each of these independent grounds.

6    **II.     MOTION TO DISMISS**

7          Finally, Defendant moves to dismiss the indictment on two grounds, neither of which has

8    merit.

9          **A.     The Court has jurisdiction over this § 922(g) case.**

10         As Defendant acknowledges, the Ninth Circuit has repeatedly affirmed that the

11   jurisdictional element of section 922(g) is satisfied by evidence that the charged firearm or

12   ammunition necessarily must have crossed state or international lines based on where it was

13   manufactured and then later found.  *See, e.g., United States v. Younger*, 398 F.3d 1179, 1193 (9th

14   Cir. 2005).  But Defendant argues that intervening cases have invalidated this well-established line

15   of authority.  Dkt. No. 171 at 3-8.  The Court finds, consistent with every decision of which it is

16   aware, that none of the cases cited by Defendant are clearly irreconcilable with binding Ninth

17   Circuit cases so as to allow this Court to disregard that long-established precedent.  *See, e.g.,*

18   *United States v. Lisbey*, 855 Fed. App'x. 412 (9th Cir. 2021), *cert. denied,* 142 S. Ct. 572 (2021) [4];

19   *see also Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc) (explaining that only

20   in cases of "clear irreconcilability" can district courts "consider themselves bound by the

21   intervening higher authority and reject the prior opinion of [the Ninth Circuit] as having been

22   effectively overruled").  The motion to dismiss on this ground is **DENIED.**

23         Relatedly, Defendant contends that if his motion to dismiss is denied, the Court "should

24   instruct the jury that the firearm possession must be 'in or affecting commerce.'"  Dkt. No. 171 at

25   8.  The Court rejects that argument as well.  The Court will instruct the jury using Model

26   Instruction 14.16, which accurately reflects current controlling Ninth Circuit law.

27

28   _____
[4] As an unpublished Ninth Circuit decision, *Lisbey* is not precedent, but may be considered for its
persuasive value.  *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

**B.    The asserted discovery and preservation violations do not warrant dismissal.**

Defendant next argues that what he characterizes as "due process violations" require dismissal of the indictment.  Dkt. No. 171 at 8-13.  Defendant asserts two purported violations: (1) failure to "record the discovery of the firearm" or "to preserve the contents of the vehicle, such as the jacket that was allegedly atop the firearm, other clothes, digital devices, and papers," Dkt. No. 171 at 9; and (2) belated disclosure of supposed evidence of misconduct by the officers who conducted the arrest and search.  *Id.*  The Court finds that neither argument supports dismissal of the indictment.

### i.    Purported failure to record discovery of firearm or preserve Corolla contents

As the government points out, the Due Process clause does not "impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  Instead, "[t]he government's failure to preserve potentially exculpatory evidence rises to the level of a due process violation only if the defendant shows that the government acted in bad faith." *United States v. Robertson*, 895 F.3d 1206, 1211 (9th Cir. 2018).  "The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed, because without knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith." *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015).  "[T]he negligent destruction of evidence does not violate due process," *United States v. Barton*, 995 F.2d 931, 936 (9th Cir. 1993), and "[i]n determining whether there was a violation warranting dismissal of the indictment, the evidence must be viewed in the government's favor," *United States v. Ubaldo*, 859 F.3d 690, 703 (9th Cir. 2017).

With respect to the failure to preserve claim, Defendant fails to show any bad faith in the officers' decision to return most of the items found in the stolen Corolla to the car before it was returned to its owner.  Unlike the circumstances in *Zaragoza-Moreira*, the case on which Defendant most heavily relies, nothing in the record here suggests that any of the officers on the scene knew of any "apparent exculpatory value" of the evidence when it was released to the

9

United States District Court
Northern District of California

Corolla's owner. *Cf.* 780 F.3d at 978-79 (in case involving drug importation charge, agent knew of potentially exculpatory value of video footage of defendant in line at port of entry, where in an interview defendant "repeatedly alerted [agent] to her duress claim and the potential usefulness" of the footage). Here, defendant asserts that "the missing items in the vehicle could have supported [his] defense that he was unaware of the rifle and ammunition," Dkt. No. 198 at 8, without explaining how. Nothing in the record suggests that Defendant made that argument to anyone on the scene, and even now he presents no testimony or declaration suggesting that he did. As discussed above, the gun and ammunition were reasonably seized based on Defendant's possession of them, without respect to who may have held title to those items. Especially given that the rifle was found a few feet from where Defendant had been sitting in the driver's seat, there is no basis to conclude that the officers somehow knew of the potential usefulness of the Corolla's contents when they released those items to the car's lawful owner. And nothing suggests that the officers had any ready way to determine whether the many other items in the car belonged to its owner or to Defendant. Accordingly, even assuming (without deciding) that the contents of the car were potentially useful and that there was no other comparable evidence, Defendant fails to point to any evidence supporting a finding that the officers acted in bad faith, requiring denial of the motion to dismiss on this ground.[5]

       To the extent Defendant argues in the alternative that the Court should give Model Criminal Jury Instruction 3.19 ("Lost or Destroyed Evidence"), the Court does not need to resolve

---

[5] Defendant's claim that the officers violated the Due Process clause by not taking photographs of the search and its fruits, or completing a detailed inventory, requires a showing of the same elements as his failure to preserve claim:  materiality and bad faith. *See United States v. Martinez-Martinez*, 369 F.3d 1076, 1086 (9th Cir. 2004) (holding that "[t]he failure to collect and preserve evidence that is potentially exculpatory may violate a defendant's due process rights if that failure was motivated by bad faith," and applying definition of material evidence as "possess[ing] an exculpatory value that was apparent before the evidence was destroyed, and [was] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means") (citations omitted). This claim thus fails for the same reason the preservation claim failed:  Defendant points to nothing in the record to suggest that anything about the officers' operation of their body worn cameras here was indicative of bad faith, and any assertion that something not recorded would have been exculpatory is entirely speculative. Without dispute, the officers recorded a significant portion of their interaction with Defendant and the search of the Corolla, including some offhand "mock[ing]" comments that appear to be the only concrete basis asserted for Defendant's bad faith claim. *See* Dkt. No. 198 at 9 (referencing body camera footage).

1    that issue now.  Defendant is correct that a finding of bad faith is not required for that instruction

2    to apply.  *See United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013).  As discussed at the

3    pretrial conference, the Court will make a final ruling as to the applicability of this instruction at or

4    before trial.

5         Lastly, Defendant asserts that the government violated *Brady* by not producing what it

6    calls "evidence regarding Officers Duggan and Roberts' misconduct prior to the original trial."

7    Dkt. No. 171 at 11.  Defendant asserts that "[i]t appears that their police department had

8    announced they were under investigation beginning the day before the trial."  *Id.*  This claim

9    appears to be based on a video posted to YouTube reflecting an interaction between Officers

10   Duggan and Roberts months after Defendant's arrest, and a statement by the PPD announcing an

11   "official review" of the incident.  *See* Dkt. No. 176 (motion to dismiss opposition) at 13-14.

12   Defendant then pivots in reply, contending that "[t]he *Brady* issue in this case is not whether the

13   government produced these public materials; it is that the defense has *never* received—not even as

14   of the date of this filing—any discovery from the government about the official review of the

15   videotaped incident."  Dkt. No. 198 at 10.

16        Nothing about any of this warrants dismissal of the indictment.  "The three elements of a

17   claim for a *Brady* violation are that the evidence at issue must be favorable to the accused, either

18   because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by

19   the State, either willfully or inadvertently; and prejudice must have ensued."  *United States v.*

20   *Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013) (cleaned up) (quotation omitted).

21        To the extent the complaint is that the government did not disclose the video and statement

22   before the first trial, Defendant has already been granted a new trial on different grounds, and now

23   has those materials.  So even assuming (without deciding) that the materials fall within

24   *Brady/Giglio*, there has been no possible due process violation as to the trial about to begin, and

25   there is also no reason for the Court to exercise its supervisory power.  To the extent the complaint

26   is that there may be some additional materials about the "official review" that have not yet been

27   produced, the Court understands from the parties' representations at the pretrial conference that

28   this issue has been resolved, based on subpoena responses received from the PPD by both the

Defendant and the government.  Accordingly, the motion to dismiss on this ground is **DENIED**.
As always, of course, the government must continue to comply with its ongoing obligations to
timely produce any *Brady* material.

### III.     CONCLUSION

Because the officers had probable cause to arrest Defendant based on the stolen car report
in the police database, and because there was a permissible basis to conduct an inventory search of
the Corolla, or in the alternative to conduct a warrantless search under the automobile exception,
the physical evidence obtained during that search was lawfully obtained.  The Court also adopts its
prior finding that there was no custodial interrogation of Defendant as to the "shoot it out"
statement, but that there was such interrogation as to the "stockbroker" statements.  The Court
finds that the seizure of the rifle and ammunition was lawful, such that suppression is
unwarranted.  Accordingly, the Court **DENIES** in part and **GRANTS** in part the motion to
suppress as detailed in this Order.

The Court further **DENIES** Defendant's motion to dismiss.


**IT IS SO ORDERED.**

Dated: November 23, 2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge